CLINTON MILK CO., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. MAY'S DAIRY COMPANY, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 12, 1952—Decided May 27, 1952.

Before Judges EASTWOOD, BIGELOW and FRANCIS.

*Mr. Louis Asarnow* argued the cause for the plaintiff-appellant.

*Mr. Isadore Glauberman* argued the cause for the defendant-respondent.

The opinion of the court was delivered by

EASTWOOD, S. J. A. D.   Plaintiff, Clinton Milk Company, a New Jersey corporation, instituted an action in the Hudson County Court, Law Division, against the defendant, May's Dairy Company, Inc., of Bayonne, New Jersey, for the recovery of $4,902.80, together with interest and costs for goods sold and delivered to the defendant between January 20, 1950, and January 27, 1950.   In its answer, the defendant stated that it had no knowledge or information sufficient to form a belief as to whether the plaintiff had in fact sold and delivered the merchandise in question and, therefore, denied liability.

The court denied the plaintiff's motion, at the close of the entire case, for a directed verdict in the amount of $4,902.80, plus interest. Thereupon, the court granted the defendant's motion for judgment in its favor without prejudice on the ground that the proofs did not establish that the merchandise was sold and delivered to it. The plaintiff appeals from the ensuing judgment and the defendant cross-appeals from so much of the judgment which adjudges the same to be without prejudice.

At the time of the alleged sales in question, the defendant company was virtually owned by two women, Mrs. Marguerite May and Mrs. Augusta Seeman, who knew little of the actual operation of the business and did not participate therein. It was conceded that the management and supervision thereof was handled by one Al Seeman. Mr. Seeman died between the date of the sales and the trial of the issue.

The two companies involved in this matter transacted business for more than 12 years. It had been the practice for defendant's trucks to pick up plaintiff's milk products at plaintiff's plant and transport them to defendant's place of business at Bayonne, for sale to its customers.

Thirteen delivery slips for the period in question, to wit: January 20, 1950, to January 27, 1950, signed by defendant's employees as evidence of receipt of the goods by defendant company, were introduced into evidence by the plaintiff. Seven of the slips bear the name of "Seeman" thereon; two "Seeman—May's Dairy" and four "May's Dairy." The total charges for the products delivered amounted to the sum of $9,474.99, of which a portion was re-sold by May's to the Army and Navy, but was later rejected and returned to plaintiff who allowed defendant a credit in the amount of $3,392.92, plus storage and strapping charges, a total of $4,572.19. Thus, the net amount claimed by plaintiff was $4,902.80, plus interest.

Joseph Asarnow, office manager and secretary of the plaintiff, testified that the two companies had been doing business together for "twelve, fifteen years"; that he had

charge of the plaintiff's books; that the milk in question was sold and delivered to the defendant; that "They came with their truck, with their own truck, signed for the delivery, signed the delivery book, and went and picked up the goods and went away"; that an invoice was mailed to defendant showing the charges to be $9,474.99, for the period in question, and that later credit was allowed for products rejected by the Army and Navy, leaving a balance due of $4,902.80.

Raymond Seeman, son of Al Seeman, manager of defendant's business, testified for plaintiff that he had been employed by the defendant company prior to and during the period of the sales in question; that he made the pick-ups at plaintiff's plant for the defendant and identified his signature on several of the delivery slips and identified the signature of his father, Al Seeman. He testified that with the exception of approximately 32,000 quarts of milk allowed as a credit, the products delivered were sold to defendant's customers.

He further testified that his father, Al Seeman, was the manager of defendant's business; that he had no other business; and that record entries were made in defendant's books showing the purchases in question. He also testified that he was present at a conference between the parties in December, 1950, when the balance due by defendant was agreed upon.

Philip Marx, president of the plaintiff company, testified that he was present at the conference between the parties and the amount due the plaintiff was agreed upon to be $4,902.80.

Mrs. Augusta Seeman, witness for the defendant, admitted that her deceased husband, Al Seeman, was the manager of the defendant company.

Mrs. Marguerite May, testifying for the defendant, admitted that Al Seeman managed the defendant's business; that she and Mrs. Seeman "didn't know the first thing about it"; that she did not know anything about the books of the corporation and explained in substance, "Mr. Seeman, it was a one-man corporation * * *," and further, that Mr. Seeman had complete charge of the affairs of the company, so far as buying and selling were concerned.

The defendant proceeded upon the theory that the account applied to Al Seeman; that the merchandise was sold to Seeman on a special arrangement with him individually. No evidence was produced to substantiate this assertion, but merely a denial of liability for the merchandise claimed for.

Plaintiff contends that it was entitled to judgment as a matter of law; that on the basis of all the evidence adduced, no legitimate inferences favorable to the defendant could be drawn and that it was error for the trial court to enter judgment favorable to the defendant.

The defendant denies plaintiff's allegation of error in the trial court's action and contends that the evidence conclusively showed that the merchandise was not sold to the defendant, and under such circumstances the trial court was not justified when granting defendant's motion for judgment in providing that the same be without prejudice. It is argued that the court should have granted defendant's motion in the form presented and thus finally adjudicated the matter.

In reviewing the testimony in this case, we find that the delivery of the milk products to the defendant company was established by the testimony of plaintiff's witnesses, Joseph Asarnow and Raymond Seeman, and Raymond Seeman testified that he personally knew the products were purchased by the defendant company while he was then an employee thereof; that it was sold to the customers of the defendant company and that he personally observed the purchases entered upon the books of that company and knew that they were not paid for. He testified that his father, A. W. Seeman, was the manager of the defendant company and had no individual business of his own. Defendant's witness corroborated the assertion that A. W. Seeman was the manager of the defendant company and further asserted that he had complete control of buying and selling and in effect, ran a "one-man" business.

The defendant relied almost entirely on the fact that some of plaintiff's invoices for some of the individual sales were addressed to "Seeman" which, therefore, tends to establish

a transaction with Seeman individually, rather than with defendant.

It is significant that the defendant failed to produce its auditor or its books to refute the testimony of Raymond Seeman concerning the recording of the transactions therein. In *Breheny v. Essex County*, 134 *N. J. L.* 129, 130, 131 (*E. & A.* 1945), Mr. Justice Heher, commenting upon the inferences to be deduced from the failure of a party to produce the best evidence available upon an issue, stated, *inter alia*:

> "* * * As said by Lord Mansfield in *Blatch v. Archer, Cowp.* 63, 65, it is a maxim of the law that 'all evidence is to be weighed according to the proof which it was in the power of one side to have produced, and in the power of the other to have contradicted.' Testimony of a weaker and inferior quality is to be cautiously scrutinized when more certain and explicit evidence is within the power of the party who has the burden of proving the fact in issue, and there is no satisfactory explanation for its non-production. An unfavorable inference may be drawn from the non-production of witnesses whose testimony would be superior in respect to the fact in issue. *Wigmore on Evidence* (3d ed.), sec. 287.
>
> "The withholding of the better-informed testimony suggests fear of exposure of facts adverse to that party, * * *""

*Cf. Eichelberger v. Inter-City Trans. Co., Inc.,* 123 *N. J. L.* 595 (*Sup. Ct.* 1940), affirmed 125 *N. J. L.* 365 (*E. & A.* 1940); *Storf v. Papalia,* 24 *N. J. Misc. R.* 145 (*Ch.* 1946); *Series Publishers, Inc., v. Greene,* 9 *N. J. Super.* 146 (*App. Div.* 1950). Furthermore, a letter dated May 24, 1950, was produced which was written on defendant's stationery over the signature of A. W. Seeman, directing the return of quantities of milk products to the plaintiff company, for which the credit referred to was subsequently given. We find no testimony by the defendant actually denying receipt of the milk products, but merely conclusions based upon the manner in which certain of the delivery slips are made out.

Our conclusion is that there were no disputed facts or disputed inferences to be drawn from the undisputed facts; therefore, the plaintiff was entitled to a directed verdict and

it was error for the court to deny its motion therefor. It follows that the court erred in granting defendant's motion for a judgment in its favor. See *Kaufman v. Pennsylvania Railroad Co.*, 2 *N. J.* 318, 324 (1949).

The judgment is reversed and the cause remanded with directions that judgment be entered in favor of the plaintiff and against the defendant in the amount of $4,902.80, plus interest from March, 1950. The defendant's cross-appeal is dismissed.